Hillary Hillary Hillary. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Thank you. Good morning. This is Beverly Martin. We appreciate everyone who's with us this morning. These cases are sent to oral argument because somebody had a question about them so we appreciate you being available to answer our questions about it. We are privileged this morning to be joined by Judge Dierman O'Scanlan from the 9th Circuit. Judge Newsome who's also on the panel, clerk for Judge O'Scanlan and I think he wanted to give him words of welcome. Yes, so thank you Judge Martin. As I did on Tuesday, I just want to give a special welcome to my old boss Judge O'Scanlan. We always appreciate our visiting judges helping us to carry the load but this is a special privilege and honor for me. I am heartbroken as I said on Tuesday that I don't get to peer down the bench and see him on the other end in flesh and blood but I will never forget this opportunity that I had to sit with him and so I'm just so grateful that he's here with us and you know thrilled to be in his Judge Newsome, thank you very much. I can assure you the privilege is all mine and the honor is mine. It is a special event for me too. Thank you. Well, we appreciate you being with us Judge O'Scanlan. With that, let's call the first case of Anthony Barrett versus Secretary of the Florida Department of Corrections. For counsel, Ms. Geddes is very good at helping us with the timekeeping. It's a little bit more complicated when we can't see each other but I'm going to try to give everybody their chance to say their piece but at the same time enforce the time limit. So with that, we'll be happy to hear from you and if you'd introduce yourself, please. Yes, good afternoon, your honors, or good morning to Judge O'Scanlan and may it please the court. My name is Jonathan Ferenc-Burke on behalf of Petitioner Appellant Tony Barrett and I've reserved eight minutes for rebuttal. I'd like to start with a question in the court's pre-argument order which goes to the threshold issue before the court, the QSBI issue. And the court asked why Mr. Barrett's pro se appellate brief to the Florida District Court clarified that he has a stand-alone claim that his plea was coerced. And the answer is that construing that pro se brief liberally in Appendix J, the cited pages, and that's court DCF numbering, or pages 25 to 26 using the numbers at the bottom center of the brief, Mr. Barrett is raising what QSBI calls two distinct claims for relief that arise from the same alleged set of operative facts. First, Mr. Barrett is raising a stand-alone claim that his plea was involuntary because the capital charges were, quote, used to induce the appellant to renew a NOLO plea, right at the bottom of 30 out of 31. He's also raising an ineffective assistance claim based on the same facts for failure to challenge prosecutorial vindictiveness. Admittedly, Mr. Barrett's pro se briefing is not artful, but the brief must be viewed as a whole and taken in context, especially given other pages in that same brief where Mr. Barrett discusses being induced to plead in violation of the due process clause, like ECF pages 15 to 17. However, under QSBI, and in keeping with the limited review afforded by the Certificate of Appealability, the question of state court preservation of the stand-alone coercion claim is not before the court today. Under QSBI, there are just two questions for the court to answer. First, whether the stand-alone coercion claim was in the federal habeas petition, and second, if it was, whether district court ruled on it. Because the federal petition presented that stand-alone claim, as Mr. Barrett pointed out in his objections to the R&R, the district court did not rule on it, so QSBI requires vacatur and remand. Can I, counsel, this is Judge Newsom. I think we're at about the two-minute mark. We promised you two minutes. I've got what I think is a threshold question, and it may be like, there may be the easiest question ever, and it may have the simplest answer ever. But it looks, just from my notes, like the 2254 was filed about two weeks before the DCA rendered its decision on post-conviction, and I just want to make sure that this petition was properly exhausted. Did you go all the way up the chain in the Florida courts on post-conviction? Yes, Your Honor, and I think that confusion probably comes because that extra DCA brief was a separate challenge based on newly discovered evidence, so it's not really an issue in the 2254 that's before this court right now. So I just want to make sure, so my timeline, again, which may be goofed up, shows that you filed the 2254 on April 14, 2015, is that right? April 14, 2015, that's right. And I guess I'm just showing that the first DCA rendered its decision on April 29, 2015, which is about 15 days later. Yes, Your Honor. And I'm just trying to figure out, I mean, did you go to the Florida Supreme Court? Sorry, Your Honor. No, no, no, please go ahead. I'm sorry. You can tell I'm just kind of flailing around trying to figure out the procedural posture. No, Your Honor, we did not seek review from the Florida Supreme Court, or Mr. Barrett did not. And I understand that under this court's precedent that exhaustion to the DCA is all that's required. Discretionary review by the Florida Supreme Court is not required to exhaust. Okay, and so you didn't have to wait on the DCA to render a decision before you filed the federal habeas petition. You could go ahead, I guess having filed it in the DCA, you could go ahead and file the 2254 before the DCA rendered its decision? That's my understanding, Your Honor, and no one has raised below in the district court or here any issue with that, so we think it's properly before the court. Okay, well I don't want to hang you up. I can kind of track that down. I just wanted to get straight in my own timeline. Thanks so much. Yes, Your Honor. Counsel, I'm interested in your response to this Exhibit J, 3031 issue. You refer to pages, and I'm looking now at the numbers on the bottom of the page. Did I understand you to say that you're relying on pages 24, 25, and 26? Is that right? Yes, Your Honor. That's the core part of the argument, although there are other parts of that brief. I think it's 10 to 12 going by the numbering on the bottom of the page where Mr. Barrett is making a similar argument. Well, Counsel, the issue is whether a separate coercion claim was raised, and it's very clear from the design of this brief that pages 24 to 26 only refer to the claim of prosecutorial vindictiveness. There's nothing in the table of contents, and I don't see anything in the language of 24 to 26 that reasonably raises a separate coercion claim. What specific words are you relying on? Well, Your Honor, I think the core language is that handful of words that I quoted on the bottom of 25 talking about being induced to renew the NOLO plea. And also looking, and if you compare a little bit, admittedly it's in the concept of prosecutorial vindictiveness, but what this Court's precedent has focused on is the constitutional violation and not so much on how the petitioner has pled or captioned the claim. So given the underlying events in the First Instance Court, we would argue that Mr. Barrett, again proceeding pro se at this point, is trying to tell the Court that his plea was involuntary. But relying specifically on what words? I'm looking at the bottom of page 25, and I'm rather puzzled because I don't see anything in there about separate claim of coercion. And of course the concern we all have is whether this was properly presented to the State Court and then of course separately presented to our Court. Yes, Your Honor, and I think it's a couple of things. I think that yes, those words used to induce the appellate on the next page when he talks about the due process clause and admittedly, Your Honor, this is an overlapping, it's got facts that overlap with the prosecutorial vindictiveness claim. But also, looking back at Mr. Barrett's brief in the trial court, in the State trial court, and that's in Appendix H at pages 9 to 15, he's got similar language there that I think is a little bit more expansive that when viewed in this context really confirms that it's a coercion claim. However, Your Honor, just a step back, I do think these arguments, again, they're not really before the Court today. Quisbee doesn't allow this Court to pierce through and look at the merits. It doesn't allow this Court to evaluate whether the claim was procedurally barred. The only question is, was it in the federal habeas petition? And if so, did the District Court rule on it? So, this is Judge Newsom. So, if that's the sole inquiry, where in the federal District Court petition did you clearly raise this coercion claim as a standalone basis for relief? I mean, you know, Quisbee talks about District Courts having to address and adjudicate claims for relief. And I guess I can see how the coercion issue might have been sort of packed in to an ineffective assistance claim, but that's precisely the terms on which the District Court addressed it, right? You presented a claim, sort of a coercion-related, we'll say, ineffective assistance claim, and the District Court resolved that claim, right? Where in the District Court pleading did you raise a freestanding coercion claim? Yes, Your Honor. And I think Quisbee talks about, in that case, there were, it parsed the grounds in that case, it identified 16 grounds that the petitioner pled, and it parsed that out into 25 constitutional claims. And it recognized that some of those claims had overlapping facts. So, here, looking at the federal habeas petition, and this is Appendix B, and I apologize for driving everybody crazy by using the ECF numbers that we used in the briefs. So, looking at pages B5, B6, again, you can't deny that it's overlapping, Your Honor. It's overlapping with the ineffective assistance claim. But we talked here about, this is about midway down the page, Mr. Barrett talks about how he told the State Trial Court that he was being coerced, that his plea further down the page was not voluntarily and knowingly entered into. The State, this is farther up, used the threat of a mandatory life sentence to coerce petitioner into accepting a plea. Your Honor, we submit that under Quisbee and the cases since then, some of which go far beyond Quisbee, I think the statement in Long is only that the claim needs to be cognizable. That's enough under that standard. And so, you're saying that our post-Quisbee precedent says that even if you've got an IAC claim that has some other kind of cognate issue embedded in it, that we necessarily treat that cognate issue as a standalone claim? Your Honor, I don't know if this Court has gone so far as to make that a per se rule, but the focus in Quisbee and then in cases like Long and in Dupree, which we cite in our brief, is essentially for the District Court to laser in on the individual constitutional claims and resolve each one. And I think here, given the overlap between the coercion claim and the prosecutorial vindictiveness, especially where Mr. Barrett objected to the R&R, he raised his hand and said, hey, Your Honor, you've got to look at the NoVo review of this. I was trying to say it was coerced. We think that's enough. And so, I guess just back to my sort of fundamental question, though, didn't the District Court resolve the claim, whatever that claim may be, on precisely the grounds that you presented it? And especially given the fact that in adjudicating the IAC claim, we'll call it the coercion-related IAC claim, the District Court sort of pierced through to the merits, in effect, of the coercion issue and said that it doesn't exist, that the IAC claim fails because it doesn't exist. So, you presented it as sort of a, we'll call it a hybrid, and the District Court resolved it as a hybrid. Why isn't that good enough? Well, Your Honor, I think comparing the analysis that the District Court did, and I will say as a District Court law clerk, I'm certainly empathetic for the great work that Judge Timothy did here. But if you look at the analysis where she does talk a little bit about the coercion claim, and then separately about the prosecutorial vindictiveness, we would argue that this Court should compare that to the analysis in cases like Locante, from this Court, which went into, it really goes into in a slightly different way the question of whether the plea was voluntary. And in cases like which talk about how when you've got a third party who's part of the consideration, that's something you've got to take into account. I think Magistrate Judge Timothy, she did look at some aspects of this, but she didn't really look at the total package of how Mr. Barrett's plea was coerced. Counsel, I'm looking at Appendix G, the portion that deals with the colloquy where your client specifically admitted that he was not coerced and that he, in accepting the plea, it was his own decision. How can we possibly  So, Your Honor, I think the, ultimately, this Court has held in, I believe it's in Knuckles, which is a Fifth Circuit case that a statement that a plea was voluntary does not bar a voluntariness challenge. And here, it is true, certainly, that Mr. Barrett ultimately admitted that his plea was not coerced. However, given the overall context, given the heightened baseless capital charges, given the recharged charges, and given the threats against his brother, we would submit that there's enough here for a coercion claim, and again, that should be adjudicated for the first time in the District Court. Although, to Judge O'Scanlan's question, the District or the Magistrate was pretty clear, right? The Magistrate, it seems to me, sort of went above and beyond. Either this is what you want to do or it's not. Nobody's making you do this. If you want to go forward, that's fine, but you're not being made to do this. I don't want you to do it. If you don't want to do it, just say the word. I want to be really clear about the voluntariness of this plea. It seems like the District Court might have even understood that there might be some confusion here and so kind of doubled down to make sure that everything was copacetic. Your Honor, again, that's true that that's what the transcript there says at page 12 using this court's UCF numbering. However, again, given that Mr. Barrett had just said yes, this plea was coerced, it's kind of surprising that no one said, well, Mr. Barrett, would you like to take a recess on Cass's case? Why are you answering that question that way? There should have been more here especially when you take into account the unique circumstances of this case with the capital charges and the brother being involved, which, again, Knuckles, which didn't involve capital charges, didn't involve time bar charges, just involved a threat to indict someone else. There the court talked about how great the danger is of a false guilty plea being induced. If there are no further questions on the Clisby claim, I can turn to the Prosecutorial Vindictiveness Ineffective Assistance Claim. Please do. Your Honor, so Mr. Barrett successfully exercised his right to    he did not have the right to bring a collateral attack on his initial plea based on ineffective and in response, the state did three distinct things. It recharged the initial charges despite having conceded in the habeas proceedings that they were time barred. Second, it added baseless capital charges and three, it threatened to indict Mr. Barrett's brother unless Mr. Barrett took another NOLA plea. Those circumstances were obvious. This is not a case where counsel has some duty to investigate where the defendant is saying, you know, you should have reached out and found somebody. Those were obvious and counsel should have recognized those circumstances and made a motion to dismiss based on prosecutorial vindictiveness. Such a motion would have changed the outcome of the case substantially in Mr. Barrett's favor. Now the state court's reasoning on this point, this is at Appendix I, pages 8 to 9, that Mr. Barrett cannot show any evidence of prosecutorial vindictiveness because he pleaded the same sentence. That's flat wrong. That does not get at the deference because it is directly contrary to Black Ledge, which says that the sentence does not matter. What matters is when the prosecution brings the charges. So even if we're reviewing at DeNovo, though, this is Judge Newsom, how do you deal with these cases that talk about independent acts? Well, yes, Your Honor, and I think the answer to that is twofold. First, the independent acts cases don't deal with what we have here, which is where the only evidence in the record is Appendix E37, which is from the investigating officer saying that there was no evidence to support sexual battery under age 12. So none of those cases have that aspect of it. And second, those cases also don't have the other two aspects, where the state is bringing in time bar charges and threatening to charge a third party unless it gets the plea for the same sentence that it had just gotten. So that's why those cases with the independent acts don't precisely control here. But I guess Taylor, right, I mean, in some ways the cases are distinguishable in a way that is good for you, but in some ways they might be distinguishable in a way that is bad for you. Like Taylor, if I'm recalling correctly, that one is one where the case goes all the way through trial, gets busted after trial, sent back, so the timing is such that you might infer or presume vindictiveness. But nonetheless, the court says that charging of additional independent acts, I think there it was, they had charged him the first time with just the drugs but not the guns. Afterward, they charged him with the guns, even though they knew about the guns to begin with. So even though that was a situation where you might infer or presume vindictiveness, the court said no. And that's a little bit worse a situation than this one from a vindictiveness standpoint in the sense that there you've gone all the way through the trial, expended all the resources, and now we have reason to think that the prosecutor is really mad and is going to take it out on the defendant, but the court still says no because there are these independent acts, the guns. That's right, Your Honor, is remembering the right case. That's the one where the defendant took the prosecutors on a little day trip up to Philadelphia for a little bit. And I think there, what's really instructive about Taylor is that there was evidence. The court assumed vindictiveness but then looked to evidence from the AUSA about why it wasn't vindictive. And the AUSA offered, well, yeah, we underdeveloped the record by accident on the first go-around. Part of that was that the defense counsel had breached an agreement with the AUSA about the scope of what they were going to argue. So that evidence isn't here. The only evidence that's in the record here is that there was no probable cause for these capital charges. And additionally, Your Honor, I think we also have here the element that the state threatened Mr. Barrett before he went through with withdrawing his plea the first time. If you do this, if you do this, we are going to add capital charges. And Mr. Barrett went ahead and withdrew his plea anyway. And then the state did what it promised to do. So, again, that's another aspect that isn't in those cases. Gotcha. I don't want to hang you up because you might want to get to your Double Jeopardy thing before your time runs out. Thank you, Your Honor. I'll just cover that Double Jeopardy claim briefly and happy to answer other questions on rebuttal. But Mr. Barrett had obvious offenses to multiple charges of possession of child pornography and the charge of possession with intent to promote. His counsel should have challenged those charges and there's no reasonable justification for having done so. As to possession, it's undisputed there was only one videotape here. The plain language of the Florida statute, Section 827.0715A, contemplates one unit of prosecution per article. There is one videotape that under that statute is one motion picture or one presentation. But, in fact, there were four separate videos on that tape. Isn't that correct? Four separate events? That is the allegation from the state. That's right. Well, isn't that a matter of fact? Yes, Your Honor. I certainly don't know the underlying facts of what's actually on there, but that's been the representation and the basis for the charges. And under Purdue, don't we count each one of those separate videos notwithstanding the fact it's on one tape as separate offenses? No, Your Honor. Purdue is a case with photos where there were 25 photos that were identified as being separate hash values. The only case that's on point here is Stowe, which says that you can't divide the article into individual units based on what's on it. And I see my time has run out. Counsel, your time has expired. Thank you. Mr. Duffy? Yes. Thank you. May it please the Court, this is Thomas Duffy on behalf of the Secretary of the Department of Corrections. As to Issue 1, there was no freestanding claim of coercion raised in the District Court, and therefore nothing was unaddressed. The citation to Clisby and the objections which counsel has relied upon, that does not revive a claim in the petition. Their claim in the petition was clearly that of ineffective assistance of counsel for failing to investigate the allegations of capital sexual battery. The point of law that counsel should have investigated is different and apart from the claim of ineffective assistance of counsel. And several cases from this circuit have established this principle. We did not cite them in the brief. I will provide them as supplemental authority, and I did give opposing counsel notice that I would rely on those. As to Issue 2, there was no valid defense of prosecutorial vindictiveness. The case law cited in the brief establishes that simply adding new charges that did not arise from the same conduct does not necessarily raise a presumption of vindictiveness, but even if it did, under these circumstances, the state fell on its sword at the resentencing and said, yes, we admit that this was outside the statute of limitations, and made the same offer as before, which was 25 years in prison, which was far from the maximum which would have been the rest of Mr. Barrett's life, even discounting the capital sexual battery. Mr. Duffy, this is Beverly Martin. I don't see anywhere where the district court or the magistrate judge, for that matter, analyzed whether Mr. Barrett could prove actual vindictiveness. What's your best record site for where that was analyzed by the lower court? If you don't think it was analyzed, you can tell me that, too. Well, I haven't considered it from that context, Your Honor, and I apologize for that. The first holding she made, of course, on prosecutorial vindictiveness was that the defendant took the plea knowing that his counsel had not investigated. Our precedent is lengthy on the fact that you can't waive an ineffective assistance of counsel claim just by pleading guilty. That's not the issue. The issue here is that there isn't any Well, I take that back. The claim that he made was that his lawyer did not investigate properly. That's an ineffective assistance of counsel claim. I'm sorry? That's an ineffective assistance of counsel claim. Are you saying failure to investigate? You agree that's an ineffective assistance of counsel claim. Failure to investigate? Yes, ma'am. That's well established. My next step is you can't waive an ineffective assistance of counsel claim just by pleading guilty. Well, not by the guilty plea in and of itself, but you can expressly waive any claim as part of a plea agreement. And the plea agreement here was actually, I mean, 25 years is a lot in prison, but considering the charges that he faced, that was far less than what he could have been. Did the plea agreement expressly waive claims of ineffective assistance of counsel? No, it did not expressly waive claims of ineffective assistance of counsel, but he entered the plea knowing that the investigation hadn't been done. And I think that's what I'm going to rely on for that point is that was Judge Timothy's first holding. And then she went on to establish that with a lengthy summation of the law on prosecutorial vindictiveness that this was not a case where a valid defense. Well, you say no vindictiveness. Mr. Barrett says yes, vindictiveness. That sounds like a fact dispute to me that was never addressed by the lower court. Well, I take exception to that. I think she made some distinct factual findings about the timing of this and the circumstances of it. They were new charges based on new conduct. Point me where she gave Mr. Barrett an opportunity to show actual vindictiveness. Well, he had the opportunity in his you mean to prove it? Yes. Well, that would have had to prove something. He would obviously have to have had an evidentiary hearing on the matter. None was had on this factual dispute. That's correct. Neither in state court nor in the court below. Thank you. You're welcome. Moving back to issue one, it appears that from what I heard in the opening argument that the appellant wants to have it both ways. He wants to have raised the claim, the freestanding claim of coercion as part of a prosecutorial vindictiveness argument. But then he says that the judge's finding in count nine of there was no prosecutorial vindictiveness that that doesn't count as a finding of I don't think he can plausibly do that. Can I turn you to the videotape issue? What is your answer to Stowe versus the 2011 case from the first VCA in Florida? I have two answers to that. One, it can't be a basis for counsel's ineffectiveness because the case was decided in 2011 and this plea was taken in 2010. At the time certainly all these other cases where there were multiple images stored on a single disk or computer file or something of that nature, all those cases said that the statute 827-0715-A made it clear that each child in a sexual performance is a separate third degree felony offense. I guess the cases show this issue is being actively litigated and so the claim would be that counsel was ineffective for not raising it. There is abundant case law, is there not, that says that counsel can't be ineffective for failing to anticipate or failing to make an argument in counsel's case that ultimately somebody else made. But the second point about... That's not my point. I mean if it's an issue that's being actively litigated in these cases, you know... Well, but all the litigation said, I mean, you're asking for counsel to be... I understand your position. Okay, but the second part  apologize, I'm under a little bit of disadvantage here. I'm working from my home and I don't have access to some things that I might normally have. But the other thing is that Stoll involved very unusual facts and they're not necessarily in this record but it was, if you would look into the record, if you had looked into the record as apparently counsel was supposed to have done, would have seen that it isn't really quite the same. In any event, the appellate court in Stoll described that as the parties agreeing that it was a motion picture, a single motion picture. Whereas this is four discrete separated by time episodes. On a single motion picture, right? I mean there's one... No, it was on a videotape. A single videotape. But you can put... A patient and a Three Stooges fest on the same videotape. It doesn't mean they're the same motion picture. And I don't know whether we got to the issue about whether the intent to distribute and the four simple possession charges can be charged for the same offense. And the evidence cited, Crosby, Chesser, and Hudson, all shows that the crimes are separate and the convictions under both subsections is permissible. And that was the state of the law when counsel represented Mr. Barrett. And so there was no double jeopardy defense to be raised, and therefore no prejudice and no deficient performance. If there are no more questions, we ask that you affirm the ruling below. Thank you. I'm sorry. This is Judge Newsom. I've got just one about the double jeopardy issue. The IAC is to double jeopardy. If you got beyond sort of what I'll call the merits of the double jeopardy issue, sort of how much weight do you put on, do you think you can put on the provision in the plea that waives sort of issues about investigation in particular? Well, that was the state court and the district court both said that that waived the issue. Both seemed to find it persuasive or find it dispositive. And you can tell from Judge Timothy's report and her report that she did not just blanketly accept what the state court had done. She regularly said that the state judge's findings were not entitled to any kind of consideration, that they were wrong. So she went ahead and made de novo rulings, but she did accept that. So that's what I would rely on there, that if you take a plea knowing that it hasn't been investigated, I think you're bound by that. I don't know of any case law that says otherwise, and I'm certain that if there is such, we'll hear about it in the opinion or possibly from opposing counsel in a notice of supplemental authority. Okay. Very well. Thank you. Again, if there is nothing further from me, I thank the court for its consideration for putting up with my stumbling around here, and we again ask that you affirm the lower court. Thank you. Thank you. This is Mr. Ferensberg again on behalf of Mr. Barrett. Just want to make a couple of points. I think, Judge Martin, your questions really pointed to something that is really evident in this court's case law, which is that regardless of whether technically a presumption of vindictiveness applied or not, what's very common is for courts to just have the evidentiary hearing and look at the question of actual vindictiveness. So that's when you look at cases like Cresdorn from the Fifth Circuit, Taylor, like I was discussing with Judge Newsom, Goodwin itself, which had an affidavit from the AUSA. An evidentiary hearing would solve these problems, right? Something in the record other than that police report at B37 that says there's no probable cause to bring these charges. Second, as to the point about ineffective assistance and investigation, Your Honor, we submit that that's just a red herring. Mr. Barrett's argument has been that these defenses were obvious. Investigating them is not really what the issue was, especially in the prosecutorial vindictiveness claim. Case comes back down in a posture where the state has just brought its full power to bear threatening Mr. Barrett with capital charges that the circumstance was obvious. It didn't require investigation. And as to the double jeopardy argument, you're setting aside some of these cases. Note that the case that Mr. Barrett referred to was also a 2015 case, so that wasn't around. But our argument depends on the plain language of the statute. And if you read Section 827-071, it talks in terms of individual articles off motion picture, off photograph. So we submit that, again, there was no investigation required there for counsel to know that it was worthwhile to make a motion to challenge those and, frankly, to result in Mr. Barrett getting a little bit lower sentence. Again, we're not claiming here that Mr. Barrett should have been getting dismissed of all these charges, but the plea and the amount of time he could have spent in jail would have been far less than the 25 years that he ended up receiving. So this is Judge Newsom. On the double jeopardy issue, you're not, it sounds like, really been trading on Stowe, which postdates the plea, but instead just sort of the plain language of the statute, which you would say, I think, Stowe later sort of vindicated or confirmed or whatever, but Stowe, because it postdates, really isn't the horse you're riding. That's right, Your Honor, and I think Stowe just confirms it. And one thing that's really interesting about Stowe, if you look at it closely, the holding of Stowe, and I apologize, I'm not familiar with what other extra aspects of it counsel is referring to, but on its face, it appears to reason that there were multiple children on the tape, but it holds that that was just one count. What the legislature in Florida did was go back and change it. The statute, H-27071, Section 5, now says that Stowe has been overruled by statute. It says that if you have multiple children on one videotape, that is multiple counts. They have never done that with respect to any of the other aspects of it. They've never said if you have multiple motion pictures or multiple scenes on a videotape, that it's multiple counts. That just further confirms that the plain language of the statute is what governed here. Can I ask you one more question about your what I think is a new argument that you've kind of tried to squeeze into your ineffective assistance double jeopardy argument? The COA issued on ineffective assistance for failure to raise a double jeopardy claim, and now as to intent to distribute, you say that you're basically making what I take to be a sufficiency of the evidence argument that this, you say, was an obvious defense. But that really, in fairness, is not before us, right? Your Honor, I think as your Honor knows, the court is bound by the COA, but under this court's COA cases, it can look at the underlying facts and issues that are presented by that claim. And I think our position would be that when Judge Chilflatt issued the COA and mentioned the intent to promote claim, that that brings that sufficiency of the evidence issue in even though it's not a double jeopardy argument, quad double jeopardy. Okay. If there are no further questions, we submit that under Clisby, this court should vacate and remand, and as to the other claims that this court should reverse and send back for an evidentiary hearing. Thank you, Your Honors. Thank you so much. Mr. Ferris-Burke, we understand you and your law firm undertook this for the court. At our request, I don't really know how that happened exactly, but we certainly appreciate your service to the court. Thank you, Your Honor. And of course, being an old Assistant Attorney General myself, I appreciate your service as well, Mr. Duffy. Well, thank you. We appreciate the presentation of the case. Thank you, Your Honor. I was muted before I could make my response, but thank you so much. All right. Thank you.